**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Daniel Coleman,                                    Case No. 18-cv-2283 (DSD/ECW)

        Plaintiff,

  v.                                                            **ORDER**

Minneapolis Public Schools,

        Defendant.

This case is before the Court on pro se Plaintiff Daniel Coleman's ("Plaintiff")

Motion to Extend Time to Complete Fact Discovery (Depositions) ("Motion for

Extension") (Dkt. 68) and Minneapolis Public School's ("the District") Motion to Quash

Subpoenas and for a Protective Order ("Motion for Protective Order") (Dkt. 69). For the

reasons stated below, the Court denies the Motion for Extension and grants the Motion

for Protective Order in part.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who worked as a Behavioral or Engagement Dean at Bryn Mawr

Elementary School during the 2016-2017 school year, alleges that the District terminated

his employment in violation of the Americans with Disabilities Act and Minnesota

Statutes § 179A.06. (Dkt. 23 at 2-3, 5; Dkt. 24 ¶ 13.)[1] In particular, Plaintiff alleges that

the District failed to accommodate his asthma and retaliated against him after he sought

---

[1]     All page citations are to the CM/ECF system's pagination unless otherwise
indicated.

accommodation for his asthma from Principal Kristiana Ward ("Principal Ward") and that he was retaliated against after his mother "sent a private/confidential email to the Minnesota Department of Education Commissioner, Dr. Brenda Casellius[,] about [a] student having a gun at Bryn Mawr School," which was then forwarded to the Superintendent of the District and for which Plaintiff allegedly was reprimanded.  (Dkt. 23 at 5-6; Dkt. 24 ¶ 7.)  Plaintiff also contends his PERLA rights were violated because the District suspended him for exercising his right to express his views about the conditions of his employment.  (Dkt. 23 at 3.)  The District contends that it terminated Plaintiff for poor job performance, including "exacerbat[ing] the situation" when students were misbehaving.  (Dkt. 24 ¶¶ 14-15.)

Plaintiff filed this action on August 3, 2018.  (Dkt. 1.)  The Court held a Rule 16 conference and entered a scheduling order on January 24, 2019.  (Dkts. 17, 18.)  Plaintiff filed the operative Amended Complaint on February 22, 2019.  (Dkt. 23.)  On June 10 and 11, 2019, Plaintiff emailed the names of several individuals he wished to depose in connection with this case to the District's counsel at the law firm of Bassford Remele.  (Dkt. 78 at 9-10.)  On June 19, 2019, counsel responded that three of the individuals, including Principal Ward, were no longer employed by the District, and that Plaintiff would have to issue subpoenas for their depositions.  (*Id.* at 8.)  As to some of the remaining individuals, counsel for the District informed Plaintiff that subpoenas would also be required for their depositions because they were not "managing agents" who had any authority over the decision to terminate Plaintiff's employment.  (*Id.*)

On June 24, 2019, Plaintiff filed a Motion to Compel Discovery (Dkt. 33), and on June 26, 2019, Plaintiff filed a Motion to Extend Fact Discovery (Dkt. 34). The Court held several hearings (Dkts. 44, 46, 54, 57), the parties submitted several briefs, letters, and affidavits (Dkts. 35, 36, 37, 38, 40, 41, 42, 47, 49, 50, 51, 55, 61, 62), and the Court issued several orders (Dkt. 45, 48, 59) in an effort to narrow the issues raised by the June 24, 2019 Motion to Compel. At the December 4, 2019 hearing on the Motion to Compel, the Court asked counsel for the District whether he was authorized to accept service on behalf of the third parties that Plaintiff proposed to depose. Counsel responded that Principal Ward had returned as an employee of the District but as to the third parties, he was not authorized to accept service. (*See* Dkt. 63 at 5 n.4.) On January 9, 2020, the Court issued its final order on the Motion to Compel, requiring the District to produce certain documents by March 30, 2020, and extended the deadline for fact discovery in this case until May 29, 2020. (*Id.* at 7-8.) The Court noted: "The parties need not wait until the District's March 30, 2020 production to issue deposition notices and subpoenas." (*Id.* at 7 n.5.)

On April 6, 2020, Plaintiff sent a letter to counsel for the District requesting a meeting to discuss discovery. (Dkt. 78 at 2.) Counsel for the District responded on the same day stating that his firm was operating remotely due to the COVID-19 pandemic and that he could not speak with Plaintiff in person but they could speak by phone. (*Id.* at 3.) Plaintiff and counsel apparently spoke on April 9, 2020 and again on April 21, 2020. (*Id.* at 6-7; Dkt. 79-1, Ex. A at 2, Ex. B at 4.) During the April 21, 2020 call, Plaintiff and counsel discussed additional documents that Plaintiff was seeking and Plaintiff's

request for an extension of the May 29, 2020 fact discovery deadline.  (Dkt. 79-1, Ex. B at 4.)  An April 21, 2020 summary email sent by counsel for the District noted that Plaintiff "advised that [he] planned to contact the court to ask for another discovery extension and to seek additional information relating to part 2c of the Court's 1/9/2020 Order."  (*Id.*)  Counsel's email concluded: "From this point forward, I will welcome written communication from you, but we will not participate in further telephone discussions regarding this case."  (*Id.*)  Plaintiff responded on the same day stating:

> I am asking for what the court has ordered.  I advised I will be moving to have discovery extended due to court orders not being honored and due to the current Covid 19 Pandemic.
>
> You disagreed for an extension and have not provided information for part C of the court order.

(Dkt. 79-1, Ex. C at 6.)

Two days later, on April 23, 2020, the Court held a pre-discovery dispute call with Plaintiff and counsel for the District.  (Dkt. 66.)  The Court directed Plaintiff "to review the Court's previous orders regarding this discovery dispute to determine if requested documents have already been ruled on by the Court and send counsel for [the District] a list of any remaining documents that are sought by April 30, 2020."  (*Id.*)  The Court also ordered the parties, if they could not resolve the dispute, to "advise the Court by emailing magistrate_wright_chambers@mnd.uscourts.gov on or before May 4, 2020 and inform the Court whether both parties agree to IDR."  (*Id.*)  No party sought relief from the Court on or before May 4, 2020, and the deadline to file non-dispositive motions expired on June 12, 2020.  (Dkt. 64 at 1.)

On June 30, 2020, at Plaintiff's request, the Clerk's Office issued ten subpoenas directed to third parties, including Ward.  (Dkt. 67.)  Plaintiff filed proofs of service for those subpoenas indicating they were served by delivery to Bassford Remele on July 8, 2020.  (*Id.*)  On July 9, 2020, counsel for the District emailed Plaintiff stating that the subpoenas were untimely in view of the May 29, 2020 deadline for fact discovery and demanding that Plaintiff withdraw the subpoenas.  (Dkt. 72-1, Ex. D at 32.)  Plaintiff responded on the same day that he was not able to serve the subpoenas earlier due to COVID and offices being closed[2] and that he would not withdraw the subpoenas.  (*Id.*)

Plaintiff filed his Motion for Extension on July 10, 2020 (Dkt. 68), and the District filed its Motion for Protective Order on July 17, 2020 (Dkt. 69).  The Court held a hearing on the Motion for Extension and Motion for Protective Order on August 20, 2020, at which the Court granted the Motion for Protective Order insofar as prohibiting either party from engaging in any discovery until the Court issued a written order on the two Motions.  (Dkt. 77.)  Also at the hearing, the District advised the Court that two additional subpoenas were served on Bassford Remele on August 19, 2020, one for the District's Crisis Prevention Intervention trainer Kevin Baker and the other for Candra Bennett, who worked as a District Senior Employee Relations Associate.  Plaintiff explained to the Court that they were for "expert" depositions, although both depositions are of District employees and it appears to be undisputed that Plaintiff did not serve any

---

[2]    Plaintiff appears to be referring to the process server's offices being closed.  (*See* Dkt. 72-1, Ex. D at 32 ("My third part wasnt [sic] able to serve due to covid19 and there [sic] offices being closed.").)

expert identities or disclosures on the District before serving the deposition notices.[3]  The

Court also ordered the parties to submit any supplemental evidence by August 27, 2020.

(*Id.*)  The parties filed their supplemental evidence on August 27, 2020 (Dkts. 78, 79),

and the Motions are now ripe for decision.

## II.      MOTION FOR EXTENSION

### A.      Legal Standard

Under Rule 16(b), a schedule "may be modified only for good cause and with the

judge's consent."  Fed. R. Civ. P. 16(b)(4).  Similarly, Local Rule 16.3 states: "A party

that moves to modify a scheduling order must: (1) establish good cause for the proposed

modification . . . ."  D. Minn. LR 16.3(b)(1).  "The primary measure of good cause is the

movant's diligence in attempting to meet the order's requirements."  *Sherman v. Winco

Fireworks, Inc.*, 532 F.3d 709, 716-17 (8th Cir. 2008) (quoting *Rahn v. Hawkins*, 464

F.3d 813, 822 (8th Cir. 2006)); *see also* Fed. R. Civ. P. 16(b), advisory committee note

(1983 Amendment) ("[T]he court may modify the schedule on a showing of good cause if

it cannot reasonably be met despite the diligence of the party seeking the extension.").

"The good cause standard of Rule 16(b) is an exacting one, for it demands a

demonstration that the existing schedule cannot reasonably be met despite the diligence

of the party seeking the extension."  *IBEW Loc. 98 Pension Fund v. Best Buy Co., Inc.*,

326 F.R.D. 513, 522 (D. Minn. 2018) (cleaned up).  The "exacting" standard set by Rule

16(b) requires that a moving party first make the requisite good cause showing.  *E.E.O.C.*

---

[3]      The Court notes that these disclosures were due on or before June 30, 2020.  (Dkt.
64 at 1.)

*v. Hibbing Taconite Co.*, 266 F.R.D. 260, 265 (D. Minn. 2009).  Even then, however "the district court retains discretion as to whether to grant the motion."  *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001).

Because scheduling orders are "a vehicle designed to streamline the flow of litigation through [the Court's] crowded docket[]," the Court does not take such orders lightly and, where good cause to modify has not been shown, "will enforce them."  *Id.*  "While the prejudice to the nonmovant resulting from modification of the scheduling order may also be a relevant factor, generally, [a court] will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines."  *Sherman*, 531 F.3d at 717 (citing *Bradford*, 249 F.3d at 809).  Moreover, pursuant to the Local Rules, "[e]xcept in extraordinary circumstances, before the passing of a deadline that a party moves to modify, the party must obtain a hearing date on the party's motion to modify the scheduling order."  D. Minn. LR 16.3(d).

Although Rule 16 governs amendment of scheduling orders, Plaintiff seeks relief under Federal Rule of Civil Procedure 6(b).[4]  Under Rule 6(b), "[w]hen an act may or

---

[4]     Plaintiff also seeks relief under Federal Rule of Civil Procedure 60(b)(1) (Dkt. 68 at 1), but paragraph (b) of Rule 60 "applies only to a 'final judgment, order, or proceeding,'" and does not apply here.  *See* 11 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 2852 (3d ed. 2008); *see also Mestecky v. N.Y.C.Dep't of Educ.*, No. 13CV4302CBAVMS, 2016 WL 7217637, at *2 (E.D.N.Y. Dec. 12, 2016) (finding that courts have "repeatedly held that a motion for reconsideration of a magistrate judge's ruling on a non-dispositive matter is not permitted by Rule 60 of the Federal Rules of Civil Procedure . . . .") (citations omitted).  Rather than seeking reconsideration, pursuant to Local Rule 72.2(a), a party may file and serve objections within 14 days of being served with a copy of a magistrate judge's order on a non-dispositive matter seeing review of the order by a district judge.  D. Minn. LR 72.2(a)(1).

must be done within a specified time, the court may, for good cause, extend the time [to complete an act] on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). "The determination as to what sort of neglect is considered excusable is an equitable one, taking account of all relevant circumstances surrounding the party's own omission." *Hawks v. J.P. Morgan Chase Bank*, 591 F.3d 1043, 1048 (8th Cir. 2010) (citation omitted).

**B.    Analysis**

Plaintiff seeks a 90-day extension of the fact discovery deadline. (Dkt. 68 at 1.) His Motion for Extension sets forth the following reasons why he needs an extension of the fact discovery deadline:

- Due to the unfortunate Pandemic COVID 19, it has been very challenging being able to acquire court reporters and a suitable venue.

- Due to Covid 19 restrictions and new procedures Plaintiff had difficulty reaching the clerk's office to drop off subpoenas. There is a drop box for submissions and then subpoenas are sent back to Plaintiff. Plaintiff submitted twice to make sure submissions were done correctly.

- Plaintiff has scheduled the Defendants deposition for July 29, 2020 at 8:30 AM at 315 se Main st. in a Performance Hall. This hall was not available until July, 2020.

- Plaintiffs server was not able to deliver subpoenas to Defendant Minneapolis Public Schools at 1250 W. Broadway in Minneapolis, MN due to Covid 19 restrictions. The Defendant's offices are closed until further notice. The process server finally was able to serve subpoenas at Bass[ford] and Remele on July 8, 2020.

- Plaintiff misunderstood the new scheduling order deadline and experienced oversight thinking depositions were due August 31, 2020.

(*Id.* at 1-2.)

In his opposition to the District's Motion for Protective Order, Plaintiff also asserts that he "faced many obstacles from the Defendant denying information or making false claims regarding the lack of availability of documents/staff members," was in a car accident on April 27, 2020, and was quarantined from May 13, 2020 to May 27, 2020 due to family members contracting COVID-19.  (Dkt. 75 at 1-2.)

1.   **Plaintiff Has Not Shown the "Extraordinary Circumstances" Required Under Local Rule 16.3(d).**

The Court first considers whether Plaintiff has shown the "extraordinary circumstances" required under Local Rule 16.3(d) to excuse the fact that he sought modification of the fact discovery deadline after that May 29, 2020 deadline had passed. In particular, Plaintiff did not seek relief from the Court with respect to the schedule until July 9, 2020, when he emailed the undersigned's chambers regarding his request and was told to file a motion on CM/ECF.  Plaintiff then filed his Motion on July 10, 2020, over a month after the May 29, 2020 close of fact discovery deadline he now seeks to extend. (Dkt. 68.)  Plaintiff explains that he did not seek modification of the scheduling order earlier because the District delayed in producing documents; he had difficulties arising out of the COVID-19 pandemic, including because he was required to self-quarantine from May 13 to May 27, 2020; he was in a car accident on April 27, 2020; and he misunderstood the scheduling order.  (*Id.* at 1-2; Dkt. 75 at 1-2.)  For several reasons, the Court concludes that those circumstances do not constitute the "extraordinary circumstances" required under Local Rule 16.3(d).

First, Plaintiff was on notice as of April 21, 2020 that the District would not agree to an extension of the fact discovery deadline, and Plaintiff informed counsel for the District on the same day that he planned on seeking an extension.  (Dkt. 79-1, Ex. B at 4; Dkt. 79-1, Ex. C at 6.)  Second, as to any delay by the District in producing documents, the Court held a pre-discovery dispute call with Plaintiff and counsel for the District on April 23, 2020, and directed Plaintiff to review the Court's previous orders to determine if requested documents had already been ruled on by the Court and to send counsel for Defendant a list of any remaining documents that were sought by April 30, 2020.  (Dkt. 66.)  The parties were directed to raise any remaining disputes regarding documents with the Court by May 4, 2020.  (*Id.*)  Neither party brought any dispute to the Court's attention.  Accordingly, to the extent Plaintiff contends that an extension is warranted because the District obstructed discovery, Plaintiff has not explained how any such obstruction prevented him from seeking relief from the Court.[5]

The Court next considers Plaintiff's April 27, 2020 car accident and the effects of the COVID-19 pandemic.  Plaintiff did not identify any injuries arising from the April 27, 2020 accident that precluded him from seeking modification of the schedule before May 29, 2020.  Moreover, while the Court takes seriously concerns regarding the COVID-19 pandemic, Plaintiff clarified at the August 20, 2020 hearing that, while he was told to

---

[5]     As to the argument that the District made false claims about the availability of staff for deposition, the Court understands this to refer to the fact that counsel for the District told Plaintiff in June 2019 that Principal Ward was no longer a District employee and later informed him that she was again a District employee.  That Principal Ward was again a District employee was made clear at the December 4, 2019 hearing, and consequently does not justify Plaintiff's late motion to extend the schedule.

self-quarantine from May 13 to May 27, 2020 due to his asthma and because certain

family members were infected with COVID-19, he personally did not experience any

COVID-19 symptoms.[6]  Plaintiff has had CM/ECF filing privileges since June 25, 2019

(Dkt. 32) and has repeatedly demonstrated his ability to file on CM/ECF.  In view of

those facts, Plaintiff has not explained how the car accident and his self-quarantine

prevented him from seeking an extension by filing a motion on CM/ECF before May 29,

2020.

   Finally, Plaintiff says that he misunderstood the scheduling order and thought the

deadline for depositions was August 31, 2020.  The Court notes, however, that the only

August 31, 2020 deadline in the January 9, 2020 Amended Pretrial Scheduling Order is

for "[e]xpert discovery, including depositions."  (Dkt. 64 at 2.)  The Court further notes

that Plaintiff's Motion to Extend Fact Discovery filed on June 26, 2019 specifically

sought a 30-day extension of the fact discovery deadline "to subpoena witnesses, depose

witnesses and file dispositive motion after July 15, 2019 [the fact discovery deadline at

that time]" and stated that Plaintiff was "currently in the process of issuing subpoenas for

a future date in July and/or Late August [2019]."  (Dkt. 34 at 1.)  In view of Plaintiff's

earlier recognition that depositions needed to be complete by the close of fact discovery,

the Court finds any misunderstanding in Spring 2020 does not constitute "extraordinary

circumstances."

---

[6]  It is not clear whether Plaintiff contracted COVID-19, but rather simply that even
if he did, he was asymptomatic.

In sum, for all of these reasons, the Court concludes that Plaintiff has not shown the requisite "extraordinary circumstances" that would justify granting Plaintiff's Motion for Extension of the fact discovery deadline when it was brought after that deadline, and denies the Motion for Extension on this ground.

### 2.    Plaintiff Has Not Shown the "Good Cause" Required Under Federal Rule of Civil Procedure 16(b)(4) and Local Rule 16.3(b)(1).

In view of the Court's decision as to "extraordinary circumstances," the Court need not address whether Plaintiff has shown the "good cause" required for an extension of the schedule under Federal Rule of Civil Procedure 16(b)(4) and Local Rule 16.3(b)(1).  However, even if Plaintiff's Motion for Extension had been timely brought, the Court would find for the following reasons that Plaintiff had not demonstrated "good cause."

To show "good cause" here, Plaintiff must show that the May 29, 2020 deadline for fact discovery could not have "reasonably be[en] met despite the diligence of the party seeking the extension."  *See IBEW Loc. 98 Pension Fund*, 326 F.R.D. at 522 (cleaned up).  Plaintiff relies heavily on the difficulties in obtaining court reporters, serving his subpoenas, and finding a location for the depositions in view of the COVID-19 pandemic.  (*See* Dkt. 68 at 1-2.)  He also explained at the hearing that he did not want to conduct his depositions until the District's document production was complete, which was not until March 30, 2020.  The Court has carefully considered these arguments and concludes that Plaintiff has not shown that he could not have reasonably completed his

depositions before May 29, 2020 and therefore finds that he has failed to meet his burden

with respect to "good cause."

As an initial matter, while the District was not required to complete its document

production until March 30, 2020, the Court instructed the parties in its January 9, 2020

Order that they "**need not wait until the District's March 30, 2020 production to issue

deposition notices and subpoenas.**"  (Dkt. 63 at 7 n.5 (emphasis added).)  The Court

understands Plaintiff's desire to have those documents in his possession before taking the

depositions, but nothing prevented Plaintiff from issuing subpoenas setting deposition

dates for after March 30, 2020 (and before the May 29, 2020 close of fact discovery) in

the meantime.  Indeed, as noted above, Plaintiff stated he was in the process of issuing

subpoenas as early as June 26, 2019.  (Dkt. 34 at 1.)

Plaintiff also referred to difficulties he had in obtaining subpoenas from the

Clerk's Office in view of the COVID-19 pandemic.  Again, the Court does not intend to

minimize the impact of the COVID-19 pandemic, but on March 13, 2020, a General

Order was posted on the District of Minnesota website stating that the U.S. Courthouses

in Minneapolis, St. Paul, Duluth, and Fergus Fall remained "open for business,"

including the Clerk's Office intake desk and ECF helpdesks, which have been staffed

throughout the pandemic.  *See* General Order In Re: Court Operations Under the Exigent

Circumstances Created by COVID-19 (March 13, 2020) at 1-2.[7]  In the absence of any

more specific explanation from Plaintiff of why it was difficult to obtain the subpoenas

_____

[7]   *See* https://www.mnd.uscourts.gov/sites/mnd/files/2020-0313_COVID-19-AdminOrder.pdf.

13

(including the dates when he first sought them), the Court cannot find that those difficulties constitute "good cause" for an extension.  Similarly, Plaintiff has referenced difficulties he had in serving the subpoenas on Bassford Remele and his attempts to do so.  But the subpoenas served on July 8, 2020 were issued by the Clerk's Office on June 30, 2020 (*see* Dkt. 67 (proofs of service of subpoenas)), and it is undisputed that Plaintiff never contacted counsel for the District by email to discuss service of the subpoenas.  Consequently, the Court cannot find "good cause" based on any delay in service on Bassford Remele.

Finally, to the extent Plaintiff contends his misunderstanding of the schedule constitutes "good cause," the Court finds that argument unpersuasive in view of Plaintiff's recognition in June 2019 that depositions needed to be complete by the close of fact discovery.  (*See* Dkt. 34 at 1.)

For all of these reasons, the Court finds that Plaintiff has not shown the "good cause" necessary under Federal Rule of Civil Procedure 16(b)(4) and Local Rule 16.3(b)(1) to extend the schedule.  Because there is no "good cause" for the extension, the Court need not and does not consider prejudice to the District.  *See Sherman*, 531 F.3d at 717 ("[G]enerally, we will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines.").  The Court has considered Plaintiff's arguments in detail, but because scheduling orders are "a vehicle designed to streamline the flow of litigation through [the Court's] crowded docket[]," the Court does not take such orders lightly and, where good cause to modify has not been shown, "will

enforce them." *Bradford*, 249 F.3d at 809.  The absence of "good cause" provides another basis for denying Plaintiff's Motion for Extension.

### 3.      Plaintiff Has Not Shown "Excusable Neglect"

Because Plaintiff moved under Rule 6(b), the Court also considers whether he has shown "excusable neglect" for his failure to complete depositions before the May 29, 2020 close of fact discovery or seek relief from the Court before that deadline and the deadline for non-dispositive motions relating to fact discovery passed.[8]  *See* Fed. R. Civ. P. 6(b)(1)(B).  It appears that the Eighth Circuit requires a finding of "good cause" before the question of "excusable neglect" need be considered.  *See Albright ex rel. Doe v. Mountain Home Sch. Dist.*, 926 F.3d 942, 951 (8th Cir. 2019) ("Although [plaintiff's] counsel thereafter attempted with some diligence to complete her response, her filing it ten days after the deadline did not create good cause where none previously existed.  Nor

---

[8]      The Court notes that it is questionable whether Rule 6(b) applies in connection with an extension of the scheduling order given that Rule 16 is specific to extensions of the scheduling order.  *See Shank v. Carleton Coll.*, 329 F.R.D. 610, 614 n.2 (D. Minn. 2019) ("Arguably the excusable-neglect standard should apply when a party seeks to modify the scheduling order after the deadline has passed.  *See* Fed. R. Civ. P. 6(b)(1)(B) (requiring a showing of good cause and excusable neglect to extend an expired deadline); *Portz v. St. Cloud State Univ.*, No. 16-cv-1115 (JRT/LIB), 2017 WL 3332220, at *3 n.1 (D. Minn. Aug. 4, 2017) (noting that 'a somewhat different analysis may be warranted for deadlines that have already run').  But the plain text of Rule 16 does not make this distinction.  And in *Sherman*, the Eighth Circuit was explicit that the 'good-cause standard governs when a party seeks leave to amend . . . outside of the time period established by a scheduling order.'  532 F.3d at 716.  Accordingly, the Court considers this appeal in light of the good-cause standard."); *Neighbors Law Firm, P.C. v. Highland Capital Mgmt., L.P.*, No. 5:09-CV-352-F, 2011 WL 238605, at *2 (E.D.N.C. Jan. 24, 2011) (quoting *Richardson v. United States*, No. 5:08-CV-260-D, 2010 WL 3855193, at *3 (E.D.N.C. Sept. 30, 2010)) ("'The good cause modification provision specific to Rule 16(b)(4) takes precedence over the generally applicable extension provisions of Rule 6(b)(1).'").

could [plaintiff] establish excusable neglect if good cause were found.").  Here, having

found no "good cause," the Court need not reach the question of "excusable neglect."

Even if the Court considered "excusable neglect," it would find that Plaintiff's

delay was not excusable.  "Excusable neglect encompasses four factors: prejudice to the

non-moving party, the length of the delay, the movant's good faith, and the reason for the

delay," where "[t]he reason for the delay is a key factor in the analysis." *Id.*  For the

same reasons the Court finds Plaintiff has not shown the "extraordinary circumstances"

required under Local Rule 16.3(d) to excuse the fact that he sought modification of the

fact discovery deadline after that May 29, 2020 deadline had passed, the Court also finds

that Plaintiff's delay in taking depositions and seeking an extension of the schedule does

not constitute "excusable neglect."

### III.    THE DISTRICT'S MOTION FOR PROTECTIVE ORDER

**A.    Legal Standard**

"Federal Rule of Civil Procedure 45 provides that 'the issuing court must quash or

modify a subpoena that' among other things 'requires disclosure of privileged or other

protected matter' or 'subjects a person to undue burden.'"  *Shukh v. Seagate Tech., LLC*,

295 F.R.D. 228, 235 (D. Minn. 2013) (quoting Fed. R. Civ. P. 45(c)(3)).  Similarly, Rule

26 permits "[a] party or any person from whom discovery is sought" to seek a protective

order, and provides that a court may, "for good cause, issue an order to protect a party or

person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed.

R. Civ. P. 26(c)(1).

**B.    Analysis**

The District asks the Court to quash Plaintiff's subpoenas, primarily on grounds of undue burden, and to issue a protective order preventing Plaintiff from conducting further discovery in this case. (Dkt. 71 at 1, 10-11, 13.) The District contends that because Plaintiff served his subpoenas after the May 29, 2020 close of fact discovery, a protective order preventing Plaintiff from seeking further discovery is necessary. (*Id.* at 14-15.)

As an initial matter, the Court notes that the District maintained at the hearing that of the twelve persons for whom Plaintiff served subpoenas, two are not District employees and only one employee, the District Superintendent, is of a high enough level that a deposition notice is sufficient to secure his attendance. Consequently, it is unclear whether the District actually has standing to move to quash on behalf of any of the subpoenaed persons other than the District Superintendent. *See Shukh*, 295 F.R.D. at 235 ("[P]arties to whom subpoenas are not directed lack standing to quash or modify such subpoenas on the basis that the subpoenas impose an undue burden.").

Nevertheless, the District has also sought a protective order in this case, and "Rule 26(c) provides that '[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending.'" *Id.* at 236 (quoting Fed. R. Civ. P. 26(c)(1)). Rule 26(c) "also provides the Court with the authority to issue 'for good cause . . . an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* (quoting Fed. R. Civ. P. 26(c)). "'The explicit mention of "a party" in the rule has been interpreted to provide standing for a party to contest discovery sought from third-parties.'" *Id.* (quoting *Underwood v.*

17

*Riverview of Ann Arbor*, No. 08-CV-11024, 2008 WL 5235992, at * 2 (E.D. Mich. Dec. 15, 2008)).  The Court therefore construes the District's motion with respect to the subpoenas as a motion for protective order ordering Plaintiff to withdraw the subpoenas. *See id.* at 235 ("Consequently, the Magistrate Judge ordered [plaintiff] to withdraw the five challenged subpoenas as well as his Rule 34 request for documents.").

Here, in view of the Court's denial of Plaintiff's Motion for Extension, the Court finds good cause for issuance of a protective order with respect to the subpoenas.  As explained in *Marvin Lumber & Cedar Co. v. PPG Industries, Inc.*:

> [T]o allow a party to continue with formal discovery—that is, discovery which invokes the authority of the Court—whether in the guise of Rule 45, or any of the other discovery methods recognized by Rule 26(a)(5), after the discovery deadline unnecessarily lengthens [the] discovery process, and diverts the parties' attention, from the post-discovery aspects of preparing a case for Trial, to continued involvement in the discovery, and in the nondispositive [] Motion process[.  W]e can find no plausible reason to exempt Rule 45 discovery from the time constraints that are applicable to all of the discovery methods recognized by the Federal Rules of Civil Procedure.

177 F.R.D. 443, 445 (D. Minn. 1997).

Pursuant to the January 9, 2020 Amended Pretrial Scheduling Order, fact discovery closed on May 29, 2020.  (Dkt. 64 at 1.)  The Court therefore concludes that requiring the third parties, ten of whom are current District employees and two of whom appear to be former District employees, to appear for depositions after the close of fact discovery would unduly burden the District and the third parties because it would require those third parties and the District to expend time in preparing for and defending the

depositions.[9]  *See Marvin Lumber & Cedar*, 177 F.R.D. at 445.  The Court therefore grants the District's Motion for Protective Order insofar as the Court will deem the twelve subpoenas Plaintiff served on current and former District employees in July and August 2020 withdrawn.  The Court will further grant the motion insofar as Plaintiff may not serve any additional discovery (including requests for production of documents, interrogatories, requests for admission, deposition notices, and subpoenas) in this action.

## C.    Sanctions

The District seeks sanctions under Federal Rule of Civil Procedure 16(f), which provides that the Court may order sanctions if a party "fails to obey a scheduling or other pretrial order," and "must order the offending party 'to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with [Rule 16], unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust,'" and Federal Rule of Civil Procedure 37(a)(5)(A), which provides that a Court "must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  (Dkt. 71 at 15 (quoting Fed.

---

[9]    The Court understands that Plaintiff believes that Mr. Baker and Ms. Bennett are expert witnesses, but Plaintiff did not provide the identities or disclosures required for experts as set forth in Federal Rule of Civil Procedure 26(a)(2)(B)-(C) by the June 30, 2020 deadline for doing so.  (*See* Dkt. 64 at 1.)  Plaintiff has not provided any explanation as to why he did not comply with that deadline, nor has he provided any evidence that he has retained Mr. Baker or Ms. Bennett to act as experts in this case.  The Court therefore will issue a protective order as to the subpoenas to Mr. Baker and Ms. Bennett.

R. Civ. P. 16(f)(1)(A)[10], Fed. R. Civ. P. 16(f)(2), Fed. R. Civ. P. 37(a)(5)(A)).)  The District contends that sanctions are necessary because the Plaintiff's issuance of subpoenas after the deadline made it "necessary for the District to file its own motion." (*Id.*)

Under the circumstances here, the Court declines to award sanctions.  While Plaintiff's pro se status and the circumstances of this case do not provide a basis for extending the fact discovery deadline, the Court finds that Plaintiff's attempts to prosecute his case by seeking these depositions does not constitute the willful disobedience of a scheduling order that would warrant sanctions.  The Court further finds that in view of Plaintiff's pro se status, the COVID-19 pandemic, and the fact that the parties were engaged in discussion about the production of documents up to and including April 2020, Plaintiff's conduct in serving the deposition notices and seeking relief from the Court once informed of the District's position in July 2020 was substantially justified.  For these reasons, the District's request for sanctions is denied.

## IV.   ORDER

Accordingly, based on the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.   Plaintiff Daniel Coleman's Motion to Extend Time to Complete Fact Discovery (Depositions) (Dkt. 68) is **DENIED**.

---

[10]   The District cited paragraph (f)(1)(A) of Rule 16 (Dkt. 71 at 15), but the quoted language comes from paragraph (f)(1)(C), *see* Fed. R. Civ. P. 16(f)(1)(C).

2.      Minneapolis Public School's Motion to Quash Subpoenas and for a

Protective Order (Dkt. 69) is **GRANTED IN PART** insofar as it seeks a

protective order, as set forth in paragraphs 3 and 4 above, and **DENIED IN**

**PART** insofar as it seeks an order quashing the subpoenas.

3.      The twelve subpoenas served by Plaintiff Daniel Coleman in July and

August 2020 are deemed **WITHDRAWN**.

4.      Plaintiff Daniel Coleman may not serve any other discovery (including

requests for production of documents, interrogatories, requests for

admission, deposition notices, and subpoenas) in this matter.

5.      Minneapolis Public School's request for sanctions is **DENIED**.


DATED: October  13, 2020                    _s/Elizabeth Cowan Wright_
                                            ELIZABETH COWAN WRIGHT
                                            United States Magistrate Judge